LEVITT & KAIZER
ATTORNEYS AT LAW
40 FULTON STREET
23rd FLOOR
NEW YORK, NEW YORK 10038-5077

RICHARD WARE LEVITT*
rlevitt@landklaw.com

NICHOLAS G. KAIZER*
nkaizer@landklaw.com

EMILY GOLUB
   of counsel
emilygolublaw@gmail.com

* ADMITTED IN N.Y., FLA., AND D.C.

TELEPHONE
(212) 480-4000

FACSIMILE
(212) 480-4444

April 21, 2017

Hon. I. Leo Glasser
United States District Court
Eastern District Of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    U.S. v. Dmitrii Karpenko, 17-cr-109 (ILG)

Dear Judge Glasser:

This letter is submitted in anticipation of Dmitrii Karpenko's upcoming sentencing proceeding on April 28, 2017. Mr. Karpenko pleaded guilty before your Honor on March 8, 2017, to conspiring to export electronic devices without required licenses, in violation of 50 U.S.C. § 1705. For the following reasons, we respectfully request that the Court sentence Mr. Karpenko, who has been incarcerated since October 6, 2016, to time-served.

Mr. Karpenko, 33 years old, is a citizen of Russia, and is married with a 4-year-old son, SK. He attended high school in the United States for eight months, in 2000, living with a host family, and obtained his BA in Business Administration from the Trent University (Canada) Honors Program, in June 2005. He also has earned a master's degree in finance, obtained in Russia.

A.  **Mr. Karpenko's Unlawful Conduct**

Mr. Karpenko's involvement in the instant conspiracy stems from his employment at the Russian company Aelek, where he commenced work in late May 2016, some five months before his arrest. Aelek is a reseller of medical equipment and electronics that was one of several companies controlled by a Russian umbrella company, Abtronics, and Karpenko was employed at Aelek as a purchasing manager.  Documents we have reviewed, including the Complaint, reflect that one or more persons at Aelek had been involved, on an ongoing basis, in purchasing electronic components on behalf of Aelek's customers and then arranging for their shipment to Russia without required licenses, in violation of U.S. law. Eventually, U.S. agents from the Department of Homeland Security, posing as sources

for such components, negotiated with one or more persons at Aelek (not Mr. Karpenko) for the sale and purchase of certain additional components for shipment to the United States. The first such shipments were in fact completed, although the components were deactivated. During these transactions, the undercover agents were interacting, principally through email, phone and Skype, with one or more employees or principals of Aelek, who used the names "David Powell" and "Simon Fox."

Eventually, Mr. Karpenko's employer thought it advisable to meet the sellers face-to-face prior to another transaction being completed, and a meeting was arranged to take place in Denver, Colorado, on October 5, 2016. However, possibly because he was suspicious of the sellers, Karpenko's employer directed Karpenko and his co-defendant, Alexey Krutilin, to make the trip and represent themselves to be Simon Fox and David Powell, respectively, although they were not previously involved in these transactions and had never used these names. As part of this plan – and because they had no prior involvement in the transaction -- the employer gave Karpenko and Krutilin a list of instructions regarding how they should comport themselves at the meeting and thereafter.

Pursuant to the employer's plan Messrs. Karpenko and Krutilin – both of whom speak English – came to the United States and met with the undercover agents, on October 5, 2016. At the meeting the anticipated deal was discussed and necessary documents were signed – including one stating that all required export licenses would be obtained. Both were arrested the following day by members of the Department of Homeland Security and both immediately acknowledged their involvement.

Messrs. Karpenko and Krutilin were initially presented in the district court of Colorado, but were thereafter transported to New York to answer the instant charges. The undersigned and his co-counsel, Raymond Granger, have since had several meetings with the government, in person and by telephone, to demonstrate that Messrs. Karpenko and Krutilin were not the "Simon Fox" and "David Powell" with whom the undercover agents had been negotiating but rather were relatively new employees of Aelek who were used as the proverbial canaries in the coal mine, to be sacrificed by their employer if, in fact, the employer had been negotiating with undercover agents – which, of course, turned out to be the case.

Based on those conversations, the government eventually agreed to permit Karpenko and Krutilin to plead guilty to a single conspiracy count.[1]

---

[1]     Probation calculated the defendants' Adjusted Offense Level to be 23, and their CHC to be I.  This assumed, however, no role adjustment, which we suggested to Probation should be either two or four points. As of the writing of this letter we have not reviewed the final PSR and therefore do not know whether Probation has adopted our suggested role adjustment.

LEVITT & KAIZER                                        Hon. I. Leo Glasser
                                                      April 21, 2017
                                                      Page-3-

### B. Letters of Support

The PSR accurately summarizes Mr. Karpenko's personal background, which we will not repeat at length. We have also received numerous letters written by Mr. Karpenko's family and friends (collected in Exhibit A) that provide additional factual and anecdotal information about him. The writers are:

1. Alex Balikoev – classmate and friend
2. Alexander and Natalia Karpenko – parents
3. Alexander Karpenko -- brother
4. Natalia Karpenko – cousin
5. Tatiana Karpenko – aunt
6. Yuri Alexandrovich Karpenko -- uncle
7. Andrew Kraev – family friend
8. Roman Shulzhenko – friend
9. Vladimir and Natalia Ubiraylo – family friends
10. Yana Ubiraylo – family friend
11. Anton Ulanov – classmate and friend
12. Leonid Urilchich – classmate and friend

We know your Honor will review these letters and we therefore will not discuss them all within the instant correspondence. We believe, however, that Mr. Karpenko's personal background is well summed up in his parents' letter, which includes the following:

…At the age of six Dima was able to enter a school because he could already read and count. That was a specific school with three foreign languages concentration- English, Spanish and French. English was a prime language, so after 10 years in school Dima joined a student exchange program and went to America, Kansas. During one year there he lived in host family, went to school and advanced his English. We are very grateful to Cony and Robert, his host parents who helped him to adapt in America.

Dima finished school with outstanding results which allowed him to enroll at the University of Trent in Canada, specializing in management. This University Dima finished also with distinction. After returning from Canada, Dima decided to enrich his knowledge in Economy and successfully finished one more University in Russia….

LEVITT & KAIZER                                        Hon. I. Leo Glasser
                                                      April 21, 2017
                                                      Page-4-

After studies Dima worked for various companies by background. He got married in 2010 and soon became a father, and now we have a four-year-old grandson SK. He is a loved child and Dima spent most of his time with him.

During these six months of Dima's absence our grandson misses his father very much and always asks when he is back. We all miss him a lot. In his last company he started to work from June 2016, and after three months has been sent to America on business trip. We were happy. He was going to visit his host family. But it turned out very nasty, our son went to jail. That was a terrible shock for us. But we are hoping for best.

Exhibit A, p. 3.

What is quite clear from all the attached letters is that Mr. Karpenko is a kind, sincere and honorable person, a loyal friend, son and sibling, who has shown in countless ways that – the instant conduct notwithstanding – he is a genuinely good person. Many of these letters include anecdotes that elaborate and expand upon the writers' laudatory statements. We also include, as Exhibit B, some representative family pictures.

Family and friends corroborate Dmitrii Karpenko's inherently decent and loyal character. Alex Balikoev, a good friend and former university classmate at Trent University, describes him as follows:

…Over the years at Trent University Dima always helped his friends including me in every possible way. On several occasions when I was pretty much homeless Dima generously shared his room in the house on Dublin St where I stayed for several months in total. His moral support took me through some hard times I had during first two years in Canada.

On several occasions Dima saved a life of our common friend at Trent University who was suffering from severe diabetes outbreaks.

I was always astonished by what a good friend and a hard worker Dima is. He would never say no to anyone if someone asked for help. He would always go an extra mile at work. From on-campus jobs to sporting activities or helping his friends move to a new place. I even recall a time in university when someone I knew asked me to help them move to a new apartment. Dima overheard the conversation and offered his hand so someone whom he never seen in his life. This engraved in my memories for the longest time…

LEVITT & KAIZER                                    Hon. I. Leo Glasser
                                                   April 21, 2017
                                                   Page-5-

After we graduated from Trent, Dima helped some of his friends to find their first jobs in trading. Than meant a lot to those who were struggling being fresh out of University. I did not come across such gestures too often in my life…

In recent years I discovered a new side of Dima. A hardworking and loving husband and a father. His love and care for his family means a world to him. He always pictured himself as a family man and he finally achieved his goal. Last time we spoke, we were hoping to get our families together one day for another reunion.

There is no end to all the great stories I can recall which outline the best of Dimas characteristics as a great human being and a true friend. All I can add is that he always been and will be my role model of honesty, fairness, kindness and hard work!

Exhibit A, pp. 1-2.

Another longtime friend and former university classmate at Trent University, Leonid Urlichich, writes about a memorable experience with Karpenko:

…The other story is that Dima has literally saved the life of his house mate Frank on [several] occasions. Frank has diabetes, and he needs urgent injections of sugar when the sugar level gets too low. This happens very suddenly, and when it does, Frank is unconscious. Dima was the one person Frank had trusted his life to. To be honest, even despite my First Aid training, I am still not certain that I would be good enough man to take on a responsibility like this for someone's life. And there were two more people living in that house. But Frank trusted Dima, and Dima was *always* there for Frank…

Exhibit A, p. 14.

Vladimir and Natalia Ubiraylo, close friends of Dmitrii Karpenko's parents who have known him from very young age, write:

…For us Dima is a person with high moral principles, who is always willing to help members of his family and friends, support them in tough situations.  In his everyday live, Dima tend to avoid conflict situations, always stays optimistic and well-balanced, with positive attitude.

He is very easy to communicate with, has high personal ambitions, takes the considered independent decisions and is always responsible for the made decisions and the executed actions.

His family and family values for Dmitri are of no small, but rather even of paramount importance. Dima is an exemplary loving father, who has a 4-year old son SK  always askes about dad and misses him a lot. Dmitri, in return, showing responsibility, paternal attention, care and love, tries as much as possible to communicate with his son on the means of communications available to him in the current situation.

Exhibit A, p. 10.

And Yana Ubiraylo, daughter of Vladimir and Natalia Ubiraylo and friend of Karpenko for more than 20 years, writes:

…The long friendship with Dmitri allows me to understand him very deeply and form my personal opinion about him. I can state with confidence that Dmitri is honest, unselfish, kind and an always ready to help person. He is frank, sociable, sympathetic, hardworking and responsible, loyal friend and all-round man. His tough character, purposefulness and optimism helped him to achieve success both in study and in work. At the same time, Dmitri would always show his tolerance and patience to people…

Dima is one of the kindest and caring fathers I have met. The attachment of his son SK to dad knows no boundaries, because Dmitri tries to devote all his spare time to family, nurturing and educating his child. Of course, parents for Dmitri are on the prior place in his live as well, and even in the current situation, as far as I know, Dima uses any opportunity given to communicate with the members of his family.

Exhibit A, p. 11.

### C.  **Time Spent at MDC**

Mr. Karpenko has now been incarcerated more than six months. He misses his family dearly, as they miss him, but he has tried to make the most of his time, taking classes in art and health education (for which he has been awarded certificates). Recently, he injured himself during recreation, and has been walking with the assistance of a crutch. An X-ray confirmed there was no break but we have been endeavoring to have the MDC authorize an MRI as the pain and swelling persist.

### D.  **Sentencing Recommendation**

When he appears before your Honor for sentence Mr. Karpenko will have been incarcerated for more than six months, away from his wife, parents and young son in

Russia. Although a sentence of time served would be a substantial variance from the Guidelines range, we respectfully suggest it is justified by the unique facts of the case. Mr. Karpenko, who has a history of working hard and honorably in lawful businesses, had commenced work at Aelek just some five months before his arrest believing this, too, was an entirely lawful business. His involvement in the instant offense stemmed from his employer's desire to use him and Mr. Krutilin to "test the waters" of the employer's relationship with the persons who turned out to be undercover agents. To this end the employer sent Karpenko and Krutilin to the United States with detailed instructions, telling them to pose as the "Simon Fox" and "David Powell," with whom the undercover agents had negotiated prior sales. Because Karpenko and Krutilin understood they were attempting to facilitate the exportation of electronic components without required licenses they are guilty of conspiracy. However, they had no independent desire to be involved in this illicit conduct and were to gain nothing from their involvement beyond the salary they were otherwise receiving. Because Mr. Karpenko's sole role in the conspiracy was to attend the meeting with the undercover agents to facilitate a sale agreed to by others – a sale that, of course, never occurred – their conduct, while criminal, did not cause any conceivable damage to the security of the United States. Indeed, whereas most defendants charged with IEEPA violations have engaged in a pattern of unlawful exports, Mr. Karpenko's involvement was limited to this single, unsuccessful effort, which he had not himself sought out and in which he was involved only at its very last moments.

Mr. Karpenko is genuinely sorry for his conduct. He has heretofore lived a law-abiding life, has paid dearly for his involvement in the charged conspiracy, as he has now been away from his family – including his young son – for more than half a year, and will likely not be permitted to return to the United States. We sincerely believe that the requested sentence will be sufficient but not greater than necessary to satisfy the purposes of sentence as set forth in 18 U.S.C. § 3553(a). In this regard, we do not believe that a lengthier sentence is required for either specific or general sentence, and respectfully suggest that a sentence of time served will properly reflect the seriousness of the offense conduct. We note that in several other cases defendants convicted of similar or analogous conduct have received equivalent sentences.[2]

---

[2]    *See* the DOJ's "SUMMARY OF MAJOR U.S. EXPORT ENFORCEMENT, ECONOMIC ESPIONAGE, TRADE SECRET AND EMBARGO-RELATED CRIMINAL CASES", updated June 27, 2016, viewable at: https://www.justice.gov/nsd/files/export_case_list_june_2016_2.pdf/download. This monograph includes summaries of numerous analogous or even more serious cases resulting in sentences of probation, e.g., *U.S. v. Nakkashian; U.S. v. Mohammadi; U.S. v. Schultz; U.S. v. Yueh-Hsun Tsai and Hsien Tai Tsai, U.S. v. Zuber; U.S. v. Kadri; U.S. v. Barber; U.S. v. Saenguthai; U.S. v. Alig; U.S. v. Stilwell; U.S. v. Bishop; U.S. v. Telemi; U.S. v. Yan Zhu; U.S. v. Helf; U.S. v. Marshall; U.S. v. El-Gamal; U.S. v. Young Su Kim; U.S. v. Yasrebi; U.S. v. Singh; and U.S. v. Madrigal.*

LEVITT & KAIZER

Hon. I. Leo Glasser
April 21, 2017
Page-8-

        Finally, we have arranged with the government to have in court documents that Messrs. Karpenko and Krutilin are prepared to execute, to consent to a judicial order of removal, which should facilitate their transport home should the Court sentence them to time served, thus avoiding the delays that would otherwise occur. Nonetheless, our communications with Homeland Security counsel suggest they will spend a period of time in ICE custody before being transported home.

        For all these reasons, we respectfully ask the Court to sentence Mr. Karpenko to time served.

                    Respectfully submitted,

                    Richard Levitt

cc: AUSAs Craig Heeren and Peter Baldwin (by ECF)
    co-counsel (by ECF)